UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| Mark Toigo, | ) |
|            Plaintiff, | ) |
| v. | ) |
| Department of Health and Senior Services, State of Missouri, | ) Case No. |
| and | ) **INJUNCTIVE RELIEF SOUGHT** |
| Randall Williams, M.D., in his official Capacity as Director of the Department of Health and Senior Services, State of Missouri, | ) |
|            Defendants. | ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Mark Toigo, by and through his undersigned counsel, files this Complaint for Declaratory and Injunctive Relief against the Missouri Department of Health and Senior Services and Randall W. Williams, M.D., in his official capacity as Director of DHSS, and states as follows:

**SUMMARY OF CLAIM**

1. The Missouri Medical Marijuana Program launched in the state in 2018 and is expected to be very lucrative. The legal marijuana industry is quickly growing nationwide, with retail sales reaching $12 billion last year. In Missouri, the medical marijuana market is expected to reach retail sales of $175 - $275 million a year.

2. Though Missouri's medical marijuana industry is expected to create significant opportunities, a state statute reserves these opportunities in large part for Missouri residents, to the exclusion of non-residents. Under Article XIV and 19 C.S.R. §

30-95 , *et seq.,* (collectively the "Residency Requirement"), non-residents are prohibited both from receiving medical use marijuana licenses and from owning a majority of any Missouri company that holds a medical marijuana license.

3. The purpose and effect of the Residency Requirement is to discriminate against non-residents.

4. The Residency Requirement violates the dormant Commerce Clause of the United States Constitution by explicitly and purposefully favoring Missouri residents over non-residents. As legal sales of medical marijuana are just beginning in Missouri, the Court should enjoin the Defendants from enforcing the Residency Requirement. This is the only way to ensure that residents and non-residents alike, including Plaintiff, are able to participate in Missouri's medical marijuana industry.

5. If its enforcement is not enjoined, the Residency Requirement will also harm businesses owned by Missouri residents who plan to participate in the program by arbitrarily limiting the universe of available investors and business partners available to these businesses. This impacts larger businesses but also smaller Missouri businesses that are looking for financial assistance from family members and acquaintances residing beyond Missouri's borders.

**PARTIES, JURISDICTION AND VENUE**

6. Mark Toigo is an individual residing in Cumberland County, Pennsylvania. Mr. Toigo has been a long-term and significant investor in Pennsylvania's marijuana program. If the Residency Requirement did not exist, Mr. Toigo or one of his entities, which are largely or entirely owned by non-Missouri residents, would apply for a medical marijuana license. He has not applied, however, because doing so would be futile as long as the Residency Requirement remains in effect. Unless enforcement of the Residency

Requirement is enjoined, Mr. Toigo will be unable to receive apply for or receive a medical marijuana license in Missouri. Mr. Toigo will thus be deprived of significant and valuable business opportunities due solely to Missouri's Residency Requirement that specifically targets non-Missouri residents like Mr. Toigo for the explicit purpose or having the effect of advantaging Missourians.

7. Additionally, Mr. Toigo is a minority shareholder in Organic Remedies MO, Inc. ("ORMO"), a duly authorized Missouri corporation that was awarded multiple licenses to operate in Missouri's medical marijuana market. Currently, 51 percent of ORMO is owned by Missouri residents, with the other 49 percent being owned by non-residents. As a result, ORMO is unable to sell any additional equity to out-of-state investors without violating the Residency Requirement as codified by Article XIV of the Missouri Constitution and 19 C.S.R. § 30-95. Unless the Residency Requirement is enjoined, Mr. Toigo will be harmed by this limitation on ORMO's ability to sell equity and raise capital for its medical marijuana operations. The Residency Requirement also decreases the value of ORMO, which, in turn, decreases the value of Mr. Toigo's interest in ORMO, by significantly limiting the universe of possible shareholders and investors in the company and/or prevents Mr. Toigo from assuming a majority interest in the company.

8. The Department of Health and Senior Services is the administrative department within the State of Missouri responsible for implementing, administering and enforcing Missouri's Medical Marijuana Act, including the Residency Requirement. 19 C.S.R. § 30-95.030(2)(A)(3).

9. Randall Williams is the Director of the Department. Director Williams has authority over the Missouri Department of Health and Senior Services and is charged with

enforcing Missouri laws and regulations governing medical marijuana facilities. He is being sued only in his official capacity. Mr. Williams and the Department are collectively referred to as "DHSS" in this Complaint.

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since Mr. Toigo has asked it to rule that Missouri's Residency Requirement violates the United States Constitution.

11. Venue is appropriate in this District under 28 U.S.C. § 1391(b) because Defendants reside in the state and in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**MISSOURI'S RESIDENCY REQUIREMENT IS UNCONSTITUTIONAL**

12. Medical marijuana has been legal in Missouri since 2018 when Missouri voters approved proposed constitutional Amendment 2. Now, more than two years later, sales of medical marijuana have just begun in Kansas City and St. Louis and are about to begin statewide.

13. Since the 2018 constitutional amendment, the launch of Missouri's medical marijuana has been delayed by, among other things, more than 800 lawsuits filed against the state by applicants whose applications were denied, a state congressional investigation into the administration of the program and Covid-19.

14. In 2019, DHSS released final rules for the enforcement of Amendment 2 (19 C.S.R. § 30-95) and created the regulatory framework necessary for medical marijuana licensing, distribution and sales. 19 C.S.R. § 30-95 codified the Residency Requirement set forth in Article XIV.

15. The Missouri constitution explicitly privileges citizens of Missouri over citizens of other states. Article XIV provives:

> (3) All medical marijuana cultivation facility, medical marijuana dispensary facility, and medical marijuana-infused products manufacturing facility licenses, entities with medical marijuana testing facility certifications, and entities with transportation certifications shall be held by entities that are majority owned by natural persons who have been citizens of the state of Missouri for at least one year prior to the application for such license or certification. Notwithstanding the foregoing, entities outside the state of Missouri may own a minority stake in such entities.

Mo. Const. art. XIV, § 1.7(3). An entity is defined by Article XIV as follows:

> (3) "Entity" means a natural person, corporation, professional corporation, non-profit corporation, cooperative corporation, unincorporated association, business trust, limited liability company, general or limited partnership, limited liability partnership, joint venture, or any other legal entity.

16. Article XIV does not define "resident" or "citizen."

17. In December 2019, Missouri's DHSS released final rules to govern the industry. 19 C.S.R. 30-95. The rules incorporate the constitutional citizenry requirements and allow DHSS to deny an application if it does not comply with the state's statutory residency requirements.

18. In fact, under the state's application process, out-of-state residents or entities owned by a majority of non-Missouri residents cannot even apply for a license.

19. Under the state's statutory regime, "[c]ultivation, infused products manufacturing, dispensary, testing, and transportation facilities shall be held by entities that are majority owned by natural persons who have been citizens of the state of Missouri

for least one (1) year prior to applying for a facility license or certification. For the purposes of this requirement, citizen means resident." 19 C.S.R. 30-95.040(3)(B).

20. In order to obtain licensure in Missouri, all applicants must show "[t]hat the entity is majority owned by natural persons who have been residents of Missouri for at least one (1) year." 19 C.S.R. 30-95.025(4)(A)(2).

21. In addition, to qualify for licensure, all medical marijuana facility applicants must provide "[a] completed Ownership Structure Form…which much show the applicant entity is majority owned by Missouri residents, and a written description or visual representation of the facility's ownership structure including all entities listed on the Ownership Structure Form." 19 C.S.R. 30-95.040(2)(C).

22. Under 19 C.S.R. 30-95.040(D), "each owner claiming Missouri residency for purposes of subsection (C) of this section, a statement that the owner had resided in Missouri for at least one (1) year and does not claim resident privileges in another state or country, as well as proof of current Missouri residency, which shall be shown by – 1. A copy of a valid Missouri's driver's license, a Missouri Identification Card, a current Missouri motor vehicle registration, or a recent Missouri utility bill; or 2. If none of these proofs are available, some other evidence of residence in Missouri, which shall be approved or denied at the discretion of the director of the medical marijuana program as sufficient proof of residency."

23. The Missouri residency requirement also applies to any transfers of ownership, which must be pre-approved by DHSS. 19 C.S.R. 30.95.040(4)(C).

24. The Residency Requirement, and the related state regulations, explicitly discriminates against residents of other states, and are thus precisely the type of state laws

that are prohibited by the dormant Commerce Clause of the U.S. Constitution. *See* U.S. Const. Art. I, § 8, Cl. 3.

25. The State of Missouri, moreover, cannot show a legitimate local purpose for the Residency Requirement.

26. The real effect of the Residency Requirement has been and will continue to be to stifle Missouri's medical marijuana program by severely restricting the flow of investment into the State. This will mean that Missouri's medical marijuana businesses will be not be able to access the capital necessary to build a vibrant, viable, and successful industry.

27. As noted above, the application process is designed to enforce the Residency Requirement. As one example of how DHSS is enforcing residency requirements, applicants must submit proof of residency, under penalty of perjury, that they meet the requirements of the Residency Requirement. This means that out-of-state residents or entities are not able to complete the application for a medical marijuana facility license.

28. Because it had no other choice, ORMO tailored its corporate structure to the requirements of the Residency Requirement. It is 51 percent owned by Missouri residents. In this form, ORMO applied for multiple medical marijuana facility licenses with DHSS.

29. The 51 percent of ORMO that is owned by Missouri residents is valuable, but in order to continue to comply with the Residency Requirement, Mr. Toigo cannot increase his ownership interest in ORMO beyond 49 percent. Moreover, Residency Requirement significantly narrows the universe of potential equity holders and prevents Mr. Toigo from selling any additional ORMO equity to potential non-Missouri partners.

30. Additionally, the Residency Requirement shuts Mr. Toigo out of Missouri's medical marijuana market because Mr. Toigo is not a Missouri resident and cannot be a

licensee, regardless of how capable and qualified he would otherwise be to hold a license. Being a non-resident, in and of itself, is disqualifying. Mr. Toigo cannot even own a controlling stake in a licensee (such as ORMO); he can, at most, be a minority owner.

31. If Missouri's medical marijuana program continues with the Residency Requirement still in effect, Mr. Toigo will be damaged, as he will be unable to take full advantage of the economic opportunities available in the program, and Mr. Toigo will be flatly prohibited from receiving any licenses.

### COUNT I – U.S. Cont. Art. I, § 8, Cl. 3, 42 U.S.C. § 1983

32. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

33. The U.S. Constitution prohibits state laws that discriminate against citizens of other states. "[D]iscrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the later. If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Oregon Waste Sys., Inc. v. Dep't. of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994); *see also, e.g., Fulton Corp. v. Faulkner,* 526 U.S. 325, 331 (1996); *Tennessee Wine & Spirits Retailers Ass'n v. Thomas.* 139 S.Ct. 2449, 2461 (2019)([I]f a state law discriminates against out-of-state goods or nonresident actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." (alternations and quotation marks omitted)).

34. A state law that discriminates against interstate commerce on its face "invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979); *see also Camps Newfoundland/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 581 (1997) (explaining that strict scrutiny of a law that facially discriminates

against non-residents "is an extremely difficult burden, so heavy that facial discrimination by itself may be a fatal defect" (quotation marks omitted)).

35. The state residency requirement in Missouri's medical marijuana program discriminates on its face against non-residents and non-resident entities.

36. Mr. Toigo is harmed by the Residency Requirement because the law explicitly targets Mr. Toigo as a non-resident, and limits Mr. Toigo's economic opportunities in Missouri's nascent marijuana industry.

37. Mr. Toigo is also harmed by the residency preference in Missouri's medical marijuana program because the law explicitly targets non-residents, undermines the ability of Mr. Toigo to own or sell any additional equity in ORMO to other non-residents or raise capital from other non-residents for ORMO. The Residency Requirement also devalues Mr. Toigo's interest in ORMO by significantly limiting the universe of potential investors in the company.

38. Missouri's residency preference does not have a legitimate local purpose. Its purpose – either by design or effect – is to benefit Missourians overs non-residents.

39. Injunctive and declaratory relief are needed to resolve this dispute between Missouri and Plaintiff, who have adverse legal interests, because Missouri's residency preference violates the United States Constitution and subjects Plaintiff to serious, concrete, and irreparable injuries.

40. Because this is an action to enforce Plaintiff's constitutional rights brought pursuant to 42 U.S.C. § 1983, Plaintiff should receive their reasonable attorney's fees incurred in prosecuting this action. *See* 42 U.S.C. § 1988.

**COUNT II – Declaratory Judgment Act**
**(U.S. Const. Art. I, § 8, Cl. 3, 28 U.S.C. § 2201)**

41. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

42. Plaintiff Mr. Toigo has taken the position that Missouri's residency preference violates the dormant Commerce Clause of the United States Constitution and is thus unenforceable.

43. Missouri's residency preference directly harms Mr. Toigo.

44. DHSS has taken the position that the Residency Requirement is enforceable and enforcing the Residency Requirement through the licensing process for Missouri's medical marijuana program.

45. An actual controversy exists between Plaintiff and DHSS as to whether the Residency Requirement is enforceable. Moreover, Mr. Toigo is unable to sell any of ORMO's additional equity to out-of-state investors or assume a majority shareholder position in a Missouri marijuana company, which hinders his ability to raise capital, and Mr. Toigo is currently unable to apply for a license or reorganize ORMO in its preferred equity structure.

46. Declaratory and injunctive relief are needed to resolve this dispute between the Department and the Plaintiff.

47. Under 28 U.S.C. § 2201, the Court has the power to declare the rights of the parties.

**WHEREFORE**, Plaintiff requests that this Court enter judgment:

A) Declaring that the Residency Requirement violates the United States Constitution;

B) Preliminarily and permanently enjoining DHSS from implementing, enforcing, or giving any effect to the Residency Requirement;

C) Awarding attorneys' fees and costs to Plaintiff; and

D) Granting such other and further relief as the Court deems just and proper.

*Respectfully submitted,*

**Green Leaf Legal, LLC**

/s/ Benjamin Stelter-Embry
Benjamin Stelter-Embry    MO Bar. 65404
1100 Main Street, Suite 2430
Kansas City, Missouri 64105
P: 816.421.5100 | F: 814.421.5101
Email: ben@greenleaflegalkc.com

**Attorney for Plaintiff**